| | |
|---|---|
| UNITED STATES DISTRICT COURT<br>EASTERN DISTRICT OF NEW YORK<br>----------------------------------------------------------------X<br>CATHIA TANGO,<br><br>                        Plaintiff,<br><br>       -against-<br><br>COSTCO WHOLESALE CORP.,<br><br>                       Defendant.<br>----------------------------------------------------------------X | **FILED**<br>**CLERK**<br><br>11:19 am, Jan 19, 2021<br><br>**U.S. DISTRICT COURT**<br>**EASTERN DISTRICT OF NEW YORK**<br>**LONG ISLAND OFFICE**<br><br>ORDER<br>19-CV-483(SJF)(ARL) |

FEUERSTEIN, District Judge:

I.     Introduction

        On or about December 17, 2018, plaintiff Cathia Tango ("plaintiff" or "Tango") commenced this personal injury action in the Supreme Court of the State of New York, County of Queens (the "state court"), against defendant Costco Wholesale Corp. ("defendant" or "Costco"), seeking, *inter alia*, damages for personal injuries she allegedly sustained as a result of defendant's negligence. On January 24, 2019, defendant filed a notice of removal pursuant to 28 U.S.C. § 1441, removing the action to this Court based upon the Court's diversity of citizenship jurisdiction under 28 U.S.C. § 1332(a). Pending before the Court is defendant's motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure dismissing plaintiff's claims in their entirety with prejudice. For the reasons set forth below, defendant's motion is granted.

1

II.     Background

     A.     Factual Allegations[1].

Plaintiff went to the Lawrence Costco on May 16, 2017, (56.1 Stat., ¶ 1 )[2], and was shopping in the aisle with the refrigerator coolers a little before 6:00 p.m. (*Id.*, ¶ 2). Plaintiff was able to see the display inside the coolers, which contained glass doors. (*Id.*)

One (1) cooler, which had a glass door with a handle on the left side of the frame, contained Kraft American Cheese. (56.1 Stat., ¶ 3). Each individual cheese package contained a block of ninety-six (96) slices (the "cheese packages") and was in a cardboard box containing multiple cheese packages, with the boxes stacked on top of each other, forming columns. (*Id.*, ¶ 4; Declaration of Allison C. Liebowitz, Esq. in Support of Motion for Summary Judgment ["Liebowitz Decl."], Ex. G at 35:23-36:2). There were two (2) rows of boxes stacked four (4) high, (56.1 Stat., ¶ 4), and the front of the boxes was partially open so that members could get the cheese packages from them. (Liebowitz Decl., Ex. F at 21:13-17 and Ex. F-1). Plaintiff alleges

---

[1] The factual allegations are taken from the materials in the record that would be admissible in evidence, *see*, Fed. R. Civ. P. 56(c)(1), and the parties' statements pursuant to Local Civil Rule 56.1 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York ("Local Civil Rule 56.1"), to the extent that they are properly supported pursuant to Rule 56(c) of the Federal Rules of Civil Procedure. *See* Local Civil Rule 56.1(d) ("Each statement by the movant or opponent pursuant to Rule 56.1(a) and (b), including each statement controverting any statement of material fact, must be followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)."); *New World Sols., Inc. v. NameMedia Inc.*, 150 F. Supp. 3d 287, 305 (S.D.N.Y. 2015) ("[I]f a party fails to properly support a statement by an adequate citation to the record, the Court may properly disregard that assertion."); *F.D.I.C. v. Hodge*, 50 F. Supp. 3d 327, 343, n. 2 (E.D.N.Y. 2014) ("Statements without citation to evidence may be properly ignored by the court."); *Kaur v. New York City Health & Hosps. Corp.*, 688 F. Supp. 2d 317, 322 (S.D.N.Y. 2010) ("Where there are no citations or where the cited materials do not support the factual assertions in the Statements, the Court is free to disregard the assertion.") Moreover, only those facts that are material to the disposition of the motion, *i.e.*, that "might affect the outcome of the suit under the governing law," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986), are set forth herein. *See Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 843 (2d Cir. 2013) ("The substantive law governing the case will identify those facts that are material, and '[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'" (brackets in original)). The facts are undisputed unless otherwise indicated.

[2] Where the facts are undisputed, the parties' respective Statements of Material Facts pursuant to Local Civil Rule 56.1 are collectively cited as "56.1 Stat."

2

that she was injured when she opened the door of that cooler and three (3) cheese packages fell on her face and arm, (*see Id.*, Ex. D(A)); and that "the improper stacking of the boxes containing the cheese is what caused the cheese to fall out and strike Plaintiff." (Plaintiff's Memorandum of Law in Opposition to Motion for Summary Judgment ["Plf. Opp."] at 5).

Plaintiff opened the cooler door with her right hand without incident, and reached into the cooler before the accident. (56.1 Stat., ¶ 9). Approximately two (2) seconds later, three (3) packages of cheese fell from the top and landed in her shopping cart, which was to her left. (*Id.*) Plaintiff kept two (2) of those packages to purchase. (*Id.*) Plaintiff claims that she did not touch any boxes containing cheese packages before the three (3) cheese packages allegedly fell. (*Id.*, ¶ 10).

Before opening the glass door, plaintiff looked in the cooler to see how the cheese was stacked, (56.1 Stat., ¶ 6), and observed that the boxes containing the cheese packages that were on top were not full. (*Id.*, ¶ 7). The Kraft American Cheese is a high selling item and stock sells quickly. (*Id.*) Plaintiff did not see any issues which led her to conclude that there was a safety hazard, (*id.*, ¶ 8), but testified that "the boxes were together . . . like pushing down towards each other, almost lopsy [sic], lopsided and facing out towards [her]," *i.e.*, the boxes were tilted in towards each other and forward, although none of them were touching the door. (Liebowitz Decl., Ex. F at 22:4-23:21). When asked how much leaning she noticed before putting her hand on the handle of the door, plaintiff replied: "The same as always. It's always like that." (*Id.* at 23:22-25). Plaintiff observed the boxes of cheese stacked similarly on prior occasions and previously selected Kraft cheese packages from the cooler without incident. (56.1 Stat., ¶ 11). Cheese has never fallen out of the cooler previously. (*Id.*)

3

Kevin Altman ("Altman"), who was the front end manager at the Lawrence Costco on the date of the accident, (56.1 Stat., ¶ 12), testified: (i) that the cardboard boxes do not get any condensation in them, nor did they produce condensation, (Liebowitz Decl., Ex. G at 38:11-39:5); (ii) that the cases "remain as sturdy regardless of how long they have been in the refrigerator for," (*Id.* at 40:9-12); and (iii) that he never "had a situation where a box that something is stacked on in the refrigerator section begins to sag" as a result of either condensation or excess weight bearing upon it. (*Id.* at 40:13-21).

Plaintiff advised Altman of the alleged accident about forty (40) minutes after it occurred, first completing her shopping and paying for her merchandise. (56.1 Stat., ¶ 13). Altman testified that after plaintiff reported the accident, he went to the cooler and "saw the Kraft American single cheese stacked in the refrigerator . . . in a normal saleable condition," meaning that "it was properly stocked without any disarray," meaning there were "no boxes out of place." (Liebowitz Decl., Ex. G at 60:10-61:2). Altman further testified that he "saw nothing that would pose a threat to anyone's safety." (*Id.* at 84:15-18).

On the date of the alleged accident, Costco Member Services employees conducted floor walks of the Lawrence Costco every hour, which included monitoring temperatures in the coolers every two (2) hours, as well as monitoring the overall safety of the sales floor every hour. (56.1 Stat., ¶ 15). If something is observed to be out of place during the floor walks, the Member Services employee is expected to put the item in its proper place; and if an item is not stocked safely, it is brought to the attention of a senior manager who would rectify the issue. (*Id.*) In addition, Costco employees assigned to the refrigeration area are constantly removing boxes and coming and going from the area. (*Id.*, ¶ 19). If anything is observed to be out of place, it would

4

be remedied. (*Id.*) Moreover, all Costco employees are trained to be on the lookout for safety hazards. (*Id.*, ¶ 16).

Defendant's "Daily Floor Walk Report" for the date of the accident indicates, *inter alia*, that the subject cooler was last inspected between 5:05 and 5:30 p.m., *i.e.*, approximately twenty-five (25) to fifty (50) minutes prior to the accident. (Liebowitz Decl., Ex. D(B) and Ex. G at 84:22-85:21).

Mahendra Ramsaywack ("Ramsaywack"), a Member Services employee at the Lawrence Costco on the date of the accident, (Liebowitz Decl., Ex. H, ¶¶ 1, 3), asserts (i) that he performed floor walks at 3:00 p.m., 4:00 p.m. and 5:00 p.m. on the date of the accident[3]; and (ii) that the 3:00 p.m. and 5:00 p.m. floor walks included temperature checks for the cooler containing Kraft American Cheese and no issues were noted. (*Id.*, ¶¶ 5-6; *see also Id.*, Ex. D(B)).

Rodney Stewart ("Stewart"), also a Member Services employee at the Lawrence Costco on the date of the accident, (Liebowitz Decl., Ex. I, ¶¶ 1, 3), asserts (i) that he performed floor walks at 6:00 p.m. and 7:00 p.m. on the date of the accident; (ii) that the 6:00 p.m. floor walk began at 6:05 p.m.; and (iii) that he inspected the coolers containing Kraft American Cheese at approximately 6:15-6:20 p.m. (*Id.,* ¶¶ 5-6; *see also Id.*, Ex. D(B)).

Ramsaywack and Stewart both further assert (i) that during the floor walks, the stock in the coolers is checked "to ensure that it is neat and safe," and if anything is out of place, "it would be addressed immediately and noted in the action log," (Liebowitz Decl., Ex. H, ¶ 7; Ex. I, ¶ 7); (ii) that no issues were noted on the date of the accident, (*id.*, Ex. H, ¶ 7; Ex. I, ¶ 7; *see also Id.*, Ex. D(B)); (iii) that they never observed Kraft American Cheese stacked in the manner

---

[3] The Daily Floor Walk Report indicates that the 5:00 floor walk was commenced at 5:05 p m. and concluded at 5:30 p.m. (Liebowitz Decl., Ex. D(B)).

5

depicted in the photographs provided by plaintiff, or they "would have reported it immediately," (*id.*, Ex. H, ¶¶ 8-9; Ex. I, ¶¶ 8-9); and (vi) that during the time that they worked at the Lawrence Costco, they never became aware "of any other accidents involving Kraft American Cheese falling out of the cooler." (*Id.*, Ex. H ¶ 11; Ex. I, ¶ 11).

      B.      Procedural History

On or about December 17, 2018, plaintiff commenced this action in the state court against defendant seeking, *inter alia*, damages for personal injuries she allegedly sustained as a result of defendant's negligence. On January 24, 2019, defendant filed a notice of removal pursuant to 28 U.S.C. § 1441, removing the action to this Court based upon the Court's diversity of citizenship jurisdiction under 28 U.S.C. § 1332(a). Issue was joined by the service of an answer on behalf of defendant on January 28, 2019.

Defendant now moves, following the close of discovery, for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure dismissing plaintiff's claims in their entirety with prejudice.

III.      Discussion[4]

      A.      Standard of Review

"Summary judgment is proper 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *ING Bank N.V. v. M/V TEMARA, IMO No. 9333929*, 892 F.3d 511, 518 (2d Cir. 2018) (quoting Fed. R. Civ. P.

---

[4] Unless otherwise noted, case quotations omit all internal quotation marks, citations, footnotes, and alterations.

56(a)); *accord Jaffer v. Hirji*, 887 F.3d 111, 114 (2d Cir. 2018). In ruling on a summary judgment motion, the district court must first "determine whether there is a genuine dispute as to a material fact, raising an issue for trial." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007); *see also Ricci v. DeStefano*, 557 U.S. 557, 129 S. Ct. 2658, 2677, 174 L. Ed. 2d 490 (2009) ("On a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party *only* if there is a 'genuine' dispute as to those facts." (emphasis added)). "A fact is material if it might affect the outcome of the suit under the governing law." *Baldwin v. EMI Feist Catalog, Inc.*, 805 F.3d 18, 25 (2d Cir. 2015).

In reviewing the record to determine whether there is a genuine issue for trial, the court must "construe the evidence in the light most favorable to the non-moving party," *Centro de la Comunidad Hispana de Locust Valley v. Town of Oyster Bay*, 868 F.3d 104, 109 (2d Cir. 2017), and "resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment." *Davis-Garett v. Urban Outfitters, Inc.*, 921 F.3d 30, 45 (2d Cir. 2019); *see also Hancock v. County of Rensselaer*, 882 F.3d 58, 64 (2d Cir. 2018) ("In determining whether there is a genuine dispute as to a material fact, we must resolve all ambiguities and draw all inferences against the moving party.") "A genuine issue of material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Pollard v. New York Methodist Hosp.*, 861 F.3d 374, 378 (2d Cir. 2017); *accord Nick's Garage, Inc. v. Progressive Casualty Ins. Co.*, 875 F.3d 107, 113-14 (2d Cir. 2017). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Ricci*, 557 U.S. at 586, 129 S. Ct. at 2677; *accord Baez v. JetBlue Airways Corp.*, 793 F.3d 269, 274 (2d Cir. 2015).

"The moving party bears the initial burden of showing that there is no genuine dispute as to a material fact." *CILP Assocs., L.P. v. PriceWaterhouse Coopers LLP*, 735 F.3d 114, 123 (2d Cir. 2013); *accord Jaffer*, 887 F.3d at 114. "[W]hen the moving party has carried its burden[,] … its opponent must do more than simply show that there is some metaphysical doubt as to the material facts," *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007), and must offer "some hard evidence showing that its version of the events is not wholly fanciful[.]" *Miner v. Clinton County, N.Y.*, 541 F.3d 464, 471 (2d Cir. 2008). The nonmoving party can only defeat summary judgment "by adduc[ing] evidence on which the jury could reasonably find for that party." *Lyons v. Lancer Ins. Co.*, 681 F.3d 50, 56 (2d Cir. 2012). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient to defeat a summary judgment motion[,]" *Fabrikant v. French*, 691 F.3d 193, 205 (2d Cir. 2012); and "[a] court cannot credit a plaintiff's merely speculative or conclusory assertions." *DiStiso v. Cook*, 691 F.3d 226, 230 (2d Cir. 2012); *see also Federal Trade Comm'n v. Moses*, 913 F.3d 297, 305 (2d Cir. 2019) ("[A] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment."); *Flores v. United States*, 885 F.3d 119, 122 (2d Cir. 2018) ("While we are required to resolve all ambiguities and draw all permissible factual inferences in favor of the non-moving party, . . . conclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment"). Since "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party[,] . . . [i]f the evidence is merely colorable, . . . or is not significantly probative, . . . summary judgment may be granted." *Anderson*, 477 U.S. at 249-50, 106 S. Ct. 2505.

8

In federal courts, summary judgment is warranted, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); *accord El-Nahal v. Yassky*, 835 F.3d 248, 252 (2d Cir. 2016); *see also Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 486 (2d Cir. 2014) ("[W]here the nonmoving party will bear the burden of proof on an issue at trial, the moving party may satisfy its burden [of showing the absence of a genuine dispute as to any material fact] by pointing to an absence of evidence to support an essential element of the nonmoving party's case"). "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322-23, 106 S. Ct. 2548; *accord Crawford*, 758 F.3d at 486; *see also Chandok v. Klessig*, 632 F.3d 803, 812 (2d Cir. 2011) ("Where the undisputed facts reveal that there is an absence of sufficient proof as to one essential element of a claim, any factual disputes with respect to other elements become immaterial and cannot defeat a motion for summary judgment.") "The moving party is 'entitled to a judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex*, 477 U.S. at 323, 106 S. Ct. 2548. Accordingly, when "the burden of persuasion at trial would be on the non-moving party . . . the party moving for summary judgment may satisfy his burden of production under Rule 56 in either of two ways: (1) by submitting evidence that negates an essential element of the non-moving party's claim, or (2) by demonstrating that the non-moving party's evidence is

9

insufficient to establish an essential element of the non-moving party's claim." *Nick's Garage*, 875 F.3d at 114; *see also DeRogatis v. Bd. of Trs. of Welfare Fund of Int'l Union of Operating Eng'rs Local 15, 15A, 15C & 15D, AFLCIO ("In re DeRogatis")*, 904 F.3d 174, 187 (2d Cir. 2018) (holding that when the ultimate burden of proof at trial would be on the non-moving party, the moving party "may satisfy their burden of production under Rule 56 by negating an essential element of the [non-moving party's] claim, whether by submitting undisputed evidence to that effect or by demonstrating the insufficiency of the [non-moving party's] own evidence.")

   B. Premises Liability

Under New York law, which the parties do not dispute applies in this diversity case, "[t]o establish a prima facie case of negligence, a plaintiff must demonstrate (1) a duty owed by the defendant to the plaintiff, (2) a breach thereof, and (3) injury proximately resulting therefrom." *Solomon v. City of New York*, 66 N.Y.2d 1026, 1027, 499 N.Y.S.2d 392, 489 N.E.2d 1294 (N.Y. 1985); *see also Coyle v. United States*, 954 F.3d 146, 148 (2d Cir. 2020) ("To establish liability [for negligence] under New York law, a plaintiff must prove (1) that the defendant owed her a duty; (2) that the defendant breached that duty; and (3) that she suffered injuries proximately resulting from that breach.") "To succeed on a premises liability claim alleging any injury caused by a defective condition, the plaintiff must demonstrate that the defendant either created the defective condition, or had actual or constructive notice thereof for such a period of time that, in the exercise of reasonable care, it should have corrected it." *Tenay v. Culinary Teachers Ass'n of Hyde Park*, 281 F. App'x 11, 13 (2d Cir. June 4, 2008) (summary order); *Rivera v 916 Peekskill Main Realty*, 147 A.D.3d 802, 803, 46 N.Y.S.3d 201 (N.Y. App. Div. 2017) ("To impose

10

[premises] liability upon a defendant for a plaintiff's injuries, there must be evidence showing the existence of a dangerous or defective condition, and that the defendant either created the condition or had actual or constructive notice of it and failed to remedy it within a reasonable time.") Since plaintiff "would bear the burden of proof on the elements of his premises liability claim" at trial, *Tenay*, 281 F. App'x at 13, where, as here, the record contains no evidence establishing a genuine issue of material fact with respect to causation, actual notice or constructive notice, the defendant is entitled to summary judgment. *Id.*; *see also Puello v. Jetro Cash & Carry Enters., LLC*, No. 18 Civ. 1645, 2020 WL 564573, at *2 n. 1 (S.D.N.Y. Feb. 5, 2020) ("If Defendant's summary judgment motion were litigated in New York state court, the burden initially would be on the defendant to demonstrate, as a matter of law, that it maintained the property in question in a reasonably safe condition and that it neither created the allegedly dangerous condition existing thereon nor had actual or constructive notice thereof . . . In federal court, however, the evidentiary burdens that the respective parties will bear at trial guide district courts in their determination of summary judgment motions. . . . Accordingly, a federal court may grant summary judgment to a defendant based on a plaintiff's failure to adduce evidence supporting the prima facie elements of his case, because at trial [] plaintiff would bear the burden of proof on the elements of his premises liability claim.")

      Plaintiff contends that "Defendant as [*sic*] offered no proof that any customers interfered with the display or altered the display to cause the condition herein[,] . . . [and is] merely speculating that they did not create the condition." (Plf. Opp. at 5). However, it is plaintiff's burden "to show that defendant's negligence was a substantial cause of the events which produced the injury." *Montas v JJC Constr. Corp.*, 92 A.D.3d 559, 560, 939 N.Y.S.2d 354 (N.Y.

11

App. Div. 2012), *aff'd*, 20 N.Y.3d 1016, 963 N.Y.S.2d 164, 985 N.E.2d 1225 (N.Y. 2013); *see also Derdiarian v Felix Contracting Corp.*, 51 N.Y.2d 308, 315, 434 N.Y.S.2d 166, 414 N.E.2d 666 (N.Y. 1980) ("To carry the burden of proving a prima facie case, the plaintiff must generally show that the defendant's negligence was a substantial cause of the events which produced the injury. . . . Plaintiff need not demonstrate, however, that the precise manner in which the accident happened, or the extent of injuries, was foreseeable.") Where it may reasonably be inferred from the evidence "that there are several possible causes of an injury, for one or more of which the defendant was not responsible, and it is just as reasonable and probable that the injury was the result of one cause as the other, plaintiff cannot have a recovery, since he has failed to prove that the negligence of the defendant caused the injury." *Montas*, 92 A.D.3d at 560, 939 N.Y.S.2d 354; *see also Prunier v. City of Watertown*, 936 F.2d 677, 680 (2d Cir. 1991) ("[A] jury may not base its verdict on mere speculation, surmise or guesswork. . . . Where the evidence [] is capable of an interpretation equally consistent with the presence or absence of a wrongful act, that meaning must be ascribed which accords with its absence."); *Digelormo v. Weil*, 260 N.Y. 192, 200, 183 N.E. 360 (N.Y. 1932) ("The law is that where the evidence is capable of an interpretation which makes it equally consistent with the absence as with the presence of a wrongful act, that meaning must be ascribed which accords with its absence. . . . The rule is well settled that where there are several possible causes of injury, for one or more of which defendant is not responsible, plaintiff cannot recover without proving the injury was sustained wholly or in part by a cause for which the defendant was responsible.") Although the plaintiff need not "exclude every other possible cause other than a defendant's breach of duty, the record must render the other possible causes sufficiently remote to enable the trier of fact to reach a verdict

12

based upon the logical inferences to be drawn from the evidence, not upon speculation." *Montas*, 92 A.D.3d at 560, 939 N.Y.S.2d 354; *accord Nussbaum v. Metro-North Commuter R.R.*, 994 F. Supp. 2d 483, 495 (S.D.N.Y. 2014), *aff'd*, 603 F. App'x 10 (2d Cir. Mar. 2, 2015).

The evidence in the record is insufficient to allow the trier of fact to reasonably infer that defendant was responsible for the allegedly dangerous condition. *See, e.g. Rosado v Home Depot*, 772 N.Y.S.2d 268, 269, 772 N.Y.S.2d 268 (N.Y. App. Div. 2004) (finding "no direct evidence that defendant's employees themselves created the alleged hazard by precariously stacking the offending plank," which the plaintiff alleged fell on her because it was stacked unevenly, and "no sufficient circumstantial basis to infer that defendant was responsible for the hazard's creation, since the stack of planks from which the offending plank fell was generally accessible to shoppers in defendant's large self-service store.") Although "[a] plaintiff need only prove that it was more likely or more reasonable that the alleged injury was caused by the defendant's negligence than by some other agency[,] . . . when an accident is just as likely to be attributed to a factor other than the one alleged by a plaintiff, any determination of the cause of the accident is bound to be predicated on sheer speculation." *Ascher v. Target Corp.*, 522 F. Supp. 2d 452, 456 (E.D.N.Y. 2007). Since it is undisputed that the Kraft American Cheese is accessible to defendant's members and is a heavily shopped item that sells out quickly, and plaintiff testified that the boxes on top of the column were not full and, thus, that cheese packages had been removed therefrom, it is just as likely that another customer could have caused the cheese packages to fall as it is that the cheese packages fell because they were improperly stacked by defendant[5]. Accordingly, plaintiff cannot prove "that it was more likely or

---

[5] Indeed, plaintiff contends that "[w]hen these items [*i.e.*, the cheese packages] are removed [from the boxes] by the members this can cause the boxes to bend and become lopsided," thus, recognizing that the accident was just as

13

more reasonable that the alleged injury was caused by the defendant's negligence than by some other agency." *Id.*

As for whether defendant had actual notice of the allegedly defective condition, which requires proof that "defendants were, in fact, aware of the dangerous condition," *Wilson v. Wal-Mart Stores E., LP*, No. 16 Civ. 8637, 2018 WL 4473342, at *7 (S.D.N.Y. Sept. 18, 2018), *appeal dismissed*, No. 18-3121 (2d Cir. Feb. 1, 2019), the record is bereft of evidence indicating previous accidents attributable to the boxes of cheese packages, or that any employee or agent of defendant received a complaint about, or was otherwise aware of, the condition prior to the accident.[6] *See Nussbaum v. Metro-North Commuter R.R.*, 603 F. App'x 10, 12 (2d Cir. Mar. 2, 2015) (summary order) ("Actual notice requires that a defendant receive complaints or similarly be alerted to the existence of the dangerous condition. . . . There is no evidence to suggest that Metro–North received any complaints about detergent residue on the floor of the train cars, or that any previous accidents were attributable to the detergent, such that Metro–North would be put on actual notice of the existence of the residue."); *Lyman v. PetSmart, Inc.*, No. 16 Civ. 04627, 2018 WL 4538908, at *6 (S.D.N.Y. Sept. 21, 2018), *appeal dismissed*, No. 18-3175 (2d

---

likely to have been caused by the conduct of other customers in removing packages of cheese from the boxes. The accident could also have occurred by a member removing a cheese package from a box and replacing it improperly; by jostling the cheese packages when reaching into the cooler; etc. In addition, plaintiff presents no evidence regarding when other members may have removed enough cheese from the boxes to cause them to bend and become lopsided and, thus, cannot establish that the allegedly defective condition existed for a sufficient period of time for defendant to discovery and remedy it. Furthermore, plaintiff's unsupported assertion that "[c]ommon experience dictates that when items are removed form [*sic*] boxes the integrity and constitution of the boxes are compromised," (Plf. Opp. at 6), fails to account for the fact that not all boxes are constructed the same and have different capacity for bearing weight, accumulating condensation, etc. Even if defendant was generally aware that boxes from which items are removed may pose a hazard, the record is bereft of any evidence from which it may reasonably be inferred that defendant had notice of the particular propensity of the boxes of cheese packages at issue to "bend and become lopsided" when items are removed therefrom.

[6] Indeed, plaintiff does not even argue that defendant has actual notice of the condition in her opposition to defendant's motion and, thus, seemingly concedes this issue.

Cir. Jan. 18, 2019) ("A defendant has actual notice if it either created the condition or received reports of it such that it is actually aware of the existence of the particular condition that caused the fall."); *Thaqi v. Wal-Mart Stores E., LP*, No. 09–CV–755, 2014 WL 1330925, at *4 (E.D.N.Y. Mar. 31, 2014) ("To constitute actual notice, a plaintiff must prove that the defendant received a report of or was otherwise aware of the dangerous condition. . . . Even if a plaintiff demonstrates that the defendant had actual notice of the condition, the defendant is entitled to a reasonable opportunity to correct the hazardous condition.") Absent evidence that defendant either created or had actual notice of the allegedly dangerous condition, plaintiff can only prevail on her claims if she can establish that defendant had constructive notice of the condition. *See, e.g. Ruggiero v Waldbaums Supermarkets*, 242 A.D.2d 268, 269, 661 N.Y.S.2d 37, (N.Y. App. Div. 1997) ("Where, as here, there is no evidence that the store created a dangerous condition by stacking small juice cans on the top shelf or had actual notice that the cans were 'lopsided', the plaintiffs must proceed on the theory of constructive notice.")

     The record fails to demonstrate that defendant had constructive notice of the allegedly defective condition. "To constitute constructive notice, a defect must be visible and apparent and it must exist for a sufficient length of time prior to the accident to permit defendant's employees to discover and remedy it." *Gordon v. Am. Museum of Natural History*, 67 N.Y.2d 836, 838, 501 N.Y.S.2d 646, 492 N.E.2d 774, 775 (N.Y. 1986). Even "a general awareness that a dangerous condition may be present is legally insufficient to constitute notice of the particular condition that caused plaintiff's fall." *Piacquadio v. Recine Realty Corp.*, 84 N.Y.2d 967, 969, 622 N.Y.S.2d 493, 646 N.E.2d 795, 796 (N.Y. 1994); *see also Taylor v. U.S.*, 121 F.3d 86, 90 (2d Cir. 1997) ("In constructive notice cases, the plaintiff must prove not simply that the defendant

15

was generally aware of the existence of the dangerous condition, but that the defendant had notice of the particular condition at issue.") "Constructive notice arises when the defendant should have known of the defect as a result of the condition's manifest nature and the length of time the condition was in existence prior to the accident." *Castellanos v. Target Dep't Stores, Inc.*, No. 12 Civ. 2775, 2013 WL 4017166, at *5 (S.D.N.Y. Aug. 7, 2013); *accord Schiano v TGI Friday's*, 205 A.D.2d 407, 407, 613 N.Y.S.2d 881 (N.Y. App. Div. 1994).

The record contains no evidence of the origin of the allegedly defective condition; nor any evidence from which it may reasonably be inferred that the allegedly lopsided condition of the boxes was visible or apparent or existed for a sufficient length of time prior to the accident to permit defendant's employees to discover and remedy it. Indeed, plaintiff testified that before opening the glass door, she looked in the cooler and observed that the boxes containing cheese packages that were on top were not full; that the stacks of cheese looked "[t]he same as always;" and that she did not see any issues which led her to conclude that there was a safety hazard. (56.1 Stat., ¶¶ 6-8; Liebowitz Decl., Ex. G at 23:22-25).

Moreover, defendant offers ample evidence of its policy requiring its Member Services employees to perform hourly safety checks of the entire warehouse, including monitoring the overall safety of the sales floor every hour and monitoring the temperatures of the coolers every two (2) hours, which are then marked on the "Daily Floor Walk Report." That report, and the testimony of defendant's employees, reveals, *inter alia*, that inspections of the cooler containing the cheese were performed every two (2) hours on the date of the accident, including, at most, approximately fifty (50) minutes before the accident[7], and no unsafe or dangerous conditions

---

[7] Plaintiff's contention that the affidavits of defendant's employees indicates that "the area where the incident occurred was last inspected for [*sic*] almost one hour," (Plf. Opp. at 6), misinterprets Ramsaywack's

16

were noted. *See, e.g. Lyman*, 2018 WL 4538908, at *8 (holding that generally, twenty-five (25) to thirty (30) minutes is an insufficient amount of time to find that a defendant had constructive notice of the dangerous condition" (citing cases)); *Shimunov v. Home Depot U.S.A., Inc.*, No. 11-cv-5136, 2014 WL 1311561, at * 6 (E.D.N.Y. Mar. 28, 2014) (finding that the plaintiff could not establish constructive notice, *inter alia*, where the store manager on duty the day of the accident "averred that she did not see any oily substance on the escalator during any of her inspections, including an inspection she conducted, at most, an hour before plaintiff's accident . . . [and] the plaintiff . . . cannot identify one fact that could lead to a reasonable conclusion about how and when the substance was created.") Furthermore, Altman, who inspected the cooler after plaintiff reported the accident, testified that he "saw the Kraft American single cheese stacked in the refrigerator . . . in a normal saleable condition," meaning that "it was properly stocked without any disarray," and that he "saw nothing that would pose a threat to anyone's safety." (Liebowitz Decl., Ex. G at 60:10-61:2, 84:15-18). Stewart, who also inspected the subject cooler shortly after the accident, likewise asserts that no issues were noted with the cooler at that time. *See, e.g. Abdelmessih v Costco Wholesale*, 28 Misc. 3d 1205(A), 957 N.Y.S.2d 634, 2010 WL 2670792, at *2 (N.Y. Sup. Ct. July 02, 2010) (finding no evidence that the defendant had constructive notice that a drill box was improperly stacked where, *inter alia*, its employee "testified that employees perform hourly checks of the entire store, which are then marked on the 'Costco Wholesale Floorwalk Checklist' . . . [t]he checklist reveals that inspections of the aisle

---

assertion. Although Ramsaywack indicates that he performed the hourly floor walks at 3:00, 4:00 and 5:00 p.m. on the date of the accident, the Daily Floor Walk Report to which he refers in his affidavit indicates that he commenced the 5:00 floor walk at 5:05 p.m. and concluded it at 5:30 p.m. (Liebowitz Decl., Ex. D(B)). Since plaintiff testified that the accident occurred "a little before" 6:00 p.m., the area was inspected approximately twenty-five (25) to fifty (50) minutes prior to the accident.

17

Case 2:19-cv-00483-SJF-ARL   Document 17   Filed 01/19/21   Page 18 of 19 PageID #: 359

containing drill cases were performed at every hour on [the date of the accident], and no unsafe or dangerous conditions were noted;" and there was evidence regarding the condition of the drill cases shortly after the accident indicating that they were not stacked in an unsafe manner). Thus, on the evidence presented, any conclusion that the allegedly defective condition of the boxes of cheese packages "exist[ed] for a sufficient length of time prior to the accident to permit defendant's employees to discovery and remedy it," *Gordon*, 67 N.Y. 2d at 838, 501 N.Y.S.2d 646, would be pure speculation. *See, e.g. Ruggiero*, 242 A.D.2d at 269, 661 N.Y.S.2d 37 (finding that since the evidence was "equally as consistent with the conclusion that the injured plaintiff or another customer jostled the cans shortly before they fell[,] . . . any finding that the cans were lopsided or unevenly stacked for any appreciable period of time would be mere speculation."); *Mercer v City of New York*, 223 A.D.2d 688, 691, 637 N.Y.S.2d 456 (N.Y. App. Div. 1996). ([I]n the absence of any evidence of the origin of the patch of grease upon which the plaintiff allegedly slipped, or proof that it existed for a sufficient length of time to afford the defendant an opportunity to remove it, a finding that the defendant had constructive notice would be pure speculation.")

In sum, while plaintiff has presented evidence indicating that the boxes of cheese packages were "lopsided," there is no evidence that defendant's employees had constructive notice of the condition of the boxes for a sufficient length of time prior to the accident to discover and remedy it. Since the record is devoid of evidence which, if viewed in the light most favorable to plaintiff, would allow a rational trier of fact to reasonably infer causation, actual notice or constructive notice, defendant is entitled to summary judgment. *See, e.g. McNee v ShopRite*, 116 A.D.3d 742, 742-43, 982 N.Y.S.2d 898 (N.Y. App. Div. 2014) ("The defendant

established its prima facie entitlement to judgment as a matter of law by demonstrating that it did not create a hazardous condition when it stacked the cases of canned cat food or have actual or constructive notice of a hazardous condition."); *Marusevich v Great Atl. & Pac. Tea Co.*, 309 A.D.2d 839, 840, 766 N.Y.S.2d 78, (N.Y. App. Div. 2003) (affirming summary judgment on plaintiff's claim that she was injured when she was struck by a six-pack of beer which fell from a shelf in a supermarket operated by the defendant as she attempted to remove another six-pack from the shelf, allegedly because the six-packs of beer were improperly stacked on a high shelf, because, *inter alia*, even if a dangerous condition existed, there was no evidence that the defendant created or had actual or constructive notice of such condition). Accordingly, defendant's motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure is granted and defendant is granted judgment as a matter of law dismissing plaintiff's claims against it in their entirety with prejudice.

IV. Conclusion

For the reasons set forth above, defendant's motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure is granted and defendant is granted judgment as a matter of law dismissing plaintiff's claims against it in their entirety with prejudice. The Clerk of the Court shall enter judgment in favor of defendant and close this case.

SO ORDERED.

/s/ *Sandra J. Feuerstein*
Sandra J. Feuerstein
United States District Judge

Dated: January 19, 2021
Central Islip, New York